Citizens National Bank and Trust Company v. Commissioner
Citizens Nat'l Bank & Trust Co. v. Commissioner
Docket No. 3584.
United States Tax Court
1945 Tax Ct. Memo LEXIS 148; 4 T.C.M. (CCH) 703; T.C.M. (RIA) 45242; June 25, 1945
*148 1. Petitioner in 1938 purchased certain real estate under foreclosure proceedings instituted by it under a first mortgage. It was trustee under a second mortgage for the benefit of certain creditors and agreed with them that it would lease the property two years with option to the lessee to purchase it and would account to the second lien holders for their pro rata part of any proceeds which might remain after completely satisfying petitioner's first mortgage indebtedness, plus all costs and expenses. In 1939 petitioner collected certain rentals from said property and after paying itself interest on its first mortgage indebtedness and satisfying other charges against the property, held the remainder of such rentals in an account on its ledger for future pro rata distribution to the second mortgage holders. Held, that the amount so held was not taxable to petitioner because it was being held in a fiduciary capacity. 2. In 1934 petitioner charged off certain spcdific bad debts and took same as a deduction in determining its net income and after taking such deduction its income tax return showed a loss of $652.59 for that year. In years subsequent to 1934 and prior to 1939 petitioner *149 recovered at least $837.66 of the specific bad debts which it charged off in 1934. Petitioner has failed to prove how much of said $837.66 was included in taxable income in the years when collected and how much was excluded from income in those years. Held, in such state of the proof the Commissioner is sustained in his inclusion of $159.79 in petitioner's income for 1939 of a bad debt recovery in that year which had been charged off in 1934. 3. Petitioner's gain from the sale of the Steel Plate Products Company property in 1940 which it had purchased in 1938 at foreclosure sale, determined from the evidence. Early L. Gilbert, C.P.A., Landsdale, Pa., for the petitioner. William H. Best, Jr., Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies *150 in petitioner's income tax as follows: $118.52 for 1939 and $445.53 for 1940. The deficiency for 1939 is due to two adjustments, namely: (a) Rental income $718.25 and (b) Other income $159.79. These adjustments were explained in the deficiency notice as follows: (a) There has been included in gross income for the year 1939 an amount of $718.25, representing rental received in connection with property acquired from Steel Plate Products Company, Pottstown, Pennsylvania. (b) Recovery on bad debts included in taxable income. Petitioner by appropriate assignments of error contests the correctness of both of these adjustments. The deficiency for 1940 is due to three adjustments as follows: (a) Gain on sale of real estate
$1,722.22
(b) Loss on sale of real estate, disal-
lowed
977.80
(c) Correction of error
.03
Total
$2,700.05
Petitioner concedes that it erred in reporting a loss of $977.80 on its income tax return for 1940 as resulting from the sale of real estate in that year. Petitioner concedes that instead of reporting a loss on the sale of real estate, it should have reported a gain from that source of $453.82. Petitioner by appropriate assignment *151 of error denies that it had a gain of $1,722.22 from the sale of real estate in 1940, as the Commissioner has determined, but on the contrary alleges that its gain from that source was $453.82 as above stated. Findings of Fact Many of the facts were stipulated and we adopt the stipulation of facts as part of our findings and incorporate same herein by reference. The petitioner is a corporation organized and existing under and by virtue of the National Banking Laws of the United States of America, with its principal place of business located in Pottstown, Pennsylvania. The Steel Plate Products Company was a corporation organized and existing under and by virtue of the Laws of the Commonwealth of Pennsylvania. with its principal place of business located in West Pottsgrove Township, Pennsylvania. On February 20, 1931, the petitioner had made various loans to the Steel Plate Products Company aggregating the sum of $10,000. On the same date, as security for its indebtedness the Steel Plate Products Company executed in favor of the petitioner a first mortgage on its real estate and plant in West Pottsgrove Township, Pennsylvania. The indebtedness was reduced by the payment of *152 $1,000 on April 16, 1931, leaving a balance due to the petitioner of $9,000. On September 25, 1933, the Steel Plate Products Company was indebted to the following persons and corporations in the specific amounts as follows: The National Bank of Pottstown
$2,000
Anna P. Evans
1,000
Annette G. Evans
700
Newton Kline
500
S. R. Morris
2,550 And on the same date the Steel Plate Products Company had arranged for a further loan from Citizens National Bank and Trust
Company, in the amount of
2,250
$9,000
On September 25, 1933, as security for the above indebtedness the Steel Plate Products Company executed in favor of the petitioner a second mortgage upon its real estate and plant in West Pottsgrove Township, Pennsylvania. On September 29, 1933, the petitioner executed an indenture of trust indicating that it was acting as trustee under second mortgage and was holding as mortgagee the second mortgage in trust for the persons and corporations and in the amounts specified therein. The Steel Plate Products Company was in default in the payment of interest and principal due under said first mortgage at the time foreclosure proceedings were begun *153 in Cotober 1937 in the Court of Common Pleas, County of Montgomery, Commonwealth of Pennsylvania. The Steel Plate Products Company was in default in the payment of interest and principal due under said second mortgage at the time foreclosure proceedings were begun as aforesaid. The Steel Plate Products Company filed a voluntary petition of bankruptcy with the United States District Court at Philadelphia, adjudicated November 4, 1937. On January 24, 1938, the petitioner herein filed a petition with the trustee in bankruptcy of the Steel Plate Products Company requesting a release of the real estate and plant of the bankrupt to the petitioner, and on February 14, 1938, the referee in bankruptcy executed an order releasing this property from the assets of the bankrupt estate. The property was sold to petitioner at foreclosure sale March 30, 1938. On April 7, 1938, the Sheriff of Montgomery County, Pennsylvania, pursuant to said sale, executed a deed conveying the said real estate and plant of the Steel Plate Products Company to the petitioner. On April 29, 1938, the petitioner opened in its individual ledger (a ledger showing the petitioner's liability to depositors) a new account *154 in which was deposited rents received and a sum representing certain proceeds of the sale of the Steel Plate Products Company's property and from which account certain items were paid. In the calendar year 1938, the petitioner charged off as depreciation on its income tax return depreciation on the Steel Plate Products Company property, $167.16. The said depreciation was determined as follows Total Cost
$13,466.60
Less Value of Land
2,000.00
Value of depreciable property
$11,466.60 Depreciation at 2 1/2 percent per annum on $11,466.60 for seven months. In the calendar year 1939, the petitioner charged off as depreciation on its income tax return depreciation on the Steel Plate Products Company property, $286.66. The said depreciation being at the rate of 2 1/2 percent per annum for 12 months on the $11,466.60 set forth above. In the calendar year 1938, the petitioner included in its income tax return as interest received, $442.38, this sum having been transferred from the account in which rents had been deposited as aforesaid. In the calendar year 1939, the petitioner included in its income tax return as interest received $808 on its first mortgage indebtedness *155 this sum having been transferred from the account in which rents had been deposited as aforesaid. On April 29, 1938, the petitioner leased the real estate and plant of the Steel Plate Products Company to the Columbia Boiler Company for a period of two years from the first day of May, 1938, for the sum of $3,840, payable monthly in advance in sums of $160 on the first day of each and every month during the said term, the lease giving to the Columbia Boiler Company the privilege of purchasing at any time within the two-year period this property for the sum of $15,000. On January 8, 1940, the petitioner sold the real estate and plant of Steel Plate Products Company to the Columbia Boiler Company for the sum of $15,000 and received in settlement thereof: Cash
$ 2,000
Mortgage
13,000
$15,000 There was no adjustment for insurance or taxes, the settlement being effected by the passing of check, mortgage and deed. A settlement sheet was not made. The petitioner in its corporate income, declared value, excess-profits and defense tax return for the calendar year 1940 claimed a long-term capital loss as a result of this sale in the amount of $977.80, as shown by the *156 following computation: January 8, 1940 Sale Price
$12,149.98
April 19, 1938 Cost
$13,581.60
Less Depreciation
453.82
13,127.78
Net Long Term Loss
$ 977.80
In the calendar year 1937, by order of the National Bank Examiner, petitioner charged off and placed in its income tax return as a bad debt deduction, $250 of its participation in the second mortgage. In the calendar year 1938, by order of the National Bank Examiner, petitioner charged off and placed in its income tax return as a bad debt deduction, $2,000 of its participation in the second mortgage. In the calendar year 1935, the National Bank of Pottstown charged off $1,999 of its $2,000 participation in this second mortgage. The petitioner's books and records for the years 1938, 1939 and 1940 show income and expense from the Steel Plate Products Company property in the following manner: The general ledger account of Steel Plate Products Company real estate shows the following sales and income: June 16, 1938 Sale of Safe
$ 8.00
June 18, 1938 Recovery of Storm
Damage
140.11
November 1, 1938 Recovery for
damage by fire
128.00
June 8, 1940 portion of sale price to
balance account
(Sale price $15,000.00, balance of
$1,418.40 credited to another ac-
count as hereinafter shown)
13,581.60
$13,857.71
*157 The account in the individual ledger referred to above, after the crediting thereto of $1,418.40 of the sale price of the real estate showed a net credit balance on February 5, 1940, of $2,405.29. This account is designated on the books of petitioner as "Steel Plate Products Bldg. Real Estate Rent Account," and a complete transcript thereof is shown as Joint Exhibit 10-J to the stipulation of facts. The petitioner's records and ledger accounts for the Steel Plate Products Company property now reflect the following: The asset account on the general
ledger shows no balance either
debit or credit.
The account in the individual ledger
shows a credit balance of
$2,405.29
For the calendar year 1939, the account in the individual ledger designated as "Steel Plate Products Bldg. Real Estate Rent Account" shows: Credits for rents received
$1,920.00
Debits for moneys paid out
1,201.75
Receipts in excess of disbursements
$ 718.25 Included in these disbursements or debits there are two items of $404 each, aggregating $808. representing interest collected on account of petitioner's first mortgage and the costs and expenses attached thereto, that were *158 included in the petitioner's income tax return for the calendar year 1939. These receipts in excess of disbursements in the amount of $718.25 were not included in the petitioner's income tax return for the calendar year 1939 for the reason that petitioner contends it must account for same to the second mortgage holders. The board of directors of the petitioner passed the following resolution on March 9, 1938: "On motion duly seconded the Board approved and instructed the president to send to the National Bank of Pottstown the following letter submitting three propositions in regard to the Steel Plate Products Company of Pottstown. "Gentlemen: Re: Steel Plate Products Company, Incorporated "At our last meeting held at this bank there was some discussion about our failure to put in writing any concrete proposal concerning the above property. We have given the matter serious consideration and in line with the thoughts expressed at that meeting we submit the following: "Proposal No. 1. We are perfectly willing to transfer all our right, title and interest in both mortgages upon being paid the full amount of the first mortgage, interest and costs. In this event we will step *159 out of the picture completely. This proposal would enable you to recoup more advantageously if the $15,000 Columbia offer would materialize. "Proposal No. 2. We are willing to continue the trust relationship provided the parties interested in the second mortgage put up their proportionate share of the moneys required to take care of the foreclosure cost, taxes, etc., and enter into any lease agreement with the Columbia outfit or any other party if acceptable to the interested parties. "Proposal No. 3. We are willing to go along with the National Bank of Pottstown on a 50-50 proposal provided the National Bank puts up one-half of the foreclosure costs, taxes, etc., and then enter into any lease agreement with such party acceptable to the parties. "We are unwilling to carry this property for a further period of two years with the terrible depreciation in building values, and then find that the leasing party is unwilling to purchase and hands the property back in such a shape or at such time that the loss to this institution would be greater than at the present. "It is our candid opinion that the property today would not bring the first mortgage plus the taxes and costs, and *160 we have no desire to gamble on the future with an almost certain greater loss facing us. "In the event that none of the foregoing proposals are accepted we intend presenting a petition to the Court to allow this bank to purchase at the sale free from trust responsibility. "Assuring you of our continued desire to cooperate, we are Yours very truly," Neither the National Bank of Pottstown nor any of the other second mortgage participants put up any moneys or any costs or any taxes to protect their rights in the second mortgage. On March 23, 1938, the board of directors of petitioner enacted the following resolution: "At the suggestion of Attorney Joseph L. Prince the following letter was ordered sent to the participants in the second mortgage on the Steel Plate Products Company property: "Dear Sirs: "On March 30, 1938 the Sheriff of Montgomery County will sell the real estate and equipment of the Steel Plate Products Company as a result of foreclosure proceedings instituted by this bank as holder of the first mortgage. "In the past since the said foreclosure this institution has endeavored to secure some arrangement with those parties interested in the second mortgage, *161 of which you are one, but without results. This is to notify you that it is the intention of this bank to purchase this property at the said sale adversely and hostile to the interests of the second mortgage participants. "In other words, it will be necessary for those interested in the second mortgage to make some arrangements whereby funds will be made available to take care of all taxes, interests and costs up to date. This bank will not carry the property in its present status because it does not believe that the same is worth even the first mortgage together with the current costs. "Kindly advise us what your attitude in this matter will be." On March 30, 1938, the board of directors of petitioner passed the following resolution: "Attorney Prince reported that the Steel Plate Products Company property was purchased at the Sheriff's sale in the name of the Citizens National Bank and Trust Company. Therefore upon motion duly seconded the president was instructed to forward letters to all the participants in the second mortgage confirming the proposition previously made to the National Bank of Pottstown." On April 18, 1938, petitioner mailed to each of the participants *162 of the second mortgage the following letter: April 18, 1938 "Leonard Leaf, President, National Bank of Pottstown, Pottstown, Pa.
Re: Steel Plate Products Co. "Dear Sirs: "This is to inform you that we have become the owner, through Sheriff's sale, of the Steel Plate Products Company property, covered by the first mortgage. "We are now obliged to pay all taxes in arrears, costs of sale, and expense of repairs to the property, for which the exact figures are not as yet available. It is our desire to dispose of this property and we would like to realize sufficient funds to pay the first mortgage with interest, also the taxes, expenses, and the second mortgage. "We do not know of any buyers, but we do have an offer to lease the property at $160.00 per month for two years, with an option to purchase during that time for $15,000.00. In view of the fact that there seems to be very little demand for properties of this kind we feel that this offer should be accepted, and we are arranging to have the lease and agreement signed. If this arrangement can be completed it is our intention to make distribution of the receipts as follows: 1. Pay interest at the rate of 6% on the first *163 mortgage, also on the total advanced for taxes and expenses. 2. Pay to the bank 5% commission on the monthly rental for services in looking after the property and making distribution. 3. Pay the balance, less any expenses, to participants in the second mortgage. If the option to purchase at $15,000.00 be exercised during the term of the lease, a distribution will be made to participants in the second mortgage of any balance remaining after payment of the first mortgage, taxes and expenses. "Assuring you that it is our intention to handle this property so that all parties interested will secure the maximum amount, we are, Yours very truly, (Signed) C. P. Buckwalter President." CPB/JMF Copies of the above letter were also sent to Mr. S. Ray Morris, Miss Anna P. Evans, Miss Annette G. Evans anf the Orphans' Home and Asylum for Aged and Infirm of the Evangelical Lutheran Church. Petitioner did not in any year file a fiduciary return reporting to the Commissioner of Internal Revenue that it had received, as trustee, the income involved in this proceeding. Petitioner sold the Steel Plate Products Company real estate during the taxable year 1940 to the Columbia Boiler Company *164 and realized from this sale $15,000. The following figures represent how petitioner claims it should account from an income tax standpoint for its receipts from the rents and the sale price of the Steel Plate Products Company real estate: Rents collected
$ 3,200.00
Receipts from sale of property
15,000.00
Total
$18,200.00
Disbursements -
Taxes, insurance, interest
paid to petitioner on
first mortgage and costs
of sale
$ 2,213.11
Distributed to petitioner
in full payment of first
mortgage and all accu-
mulated charges there-
on as shown on Joint
Exhibt 9-I
13,581.60
15,794.71
Balance in the account in the in-
dividual ledger to be distributed
to second mortgage holders
$ 2,405.29
Bad Debt Recovery Issue In the taxable year 1934 the petitioner charged off bad debts aggregating $6,699, including in these chargeoffs a bad debt of J. B. March in the amount of $475, and placed all of these chargeoffs in its Federal income tax return as a deduction for bad debts. The petitioner's Federal income tax return for the year 1934 showed a net loss of $652.59. On March 1, 1939, petitioner recovered from J. B. March on account of the chargeoff *165 the sum of $184.79, paid an attorney's fee of $25 and excluded from its income tax return for the taxable year 1939 the net difference of $159.79 as being a recovery of a bad debt chargeoff for which the petitioner alleges it had received no tax benefit. Of the bad debts which petitioner charged off on its books in 1934, the following were recovered by petitioner in subsequent years prior to 1939: Year
Account
Amount
1935
Wetty note
$ 18.75
1936
J. B. March note
100.00
1937
Lau Motors Company
5.00
1937
J. B. March
100.00
1937
Lau Motor Company
64.96
1937
J. B. March note
25.64
1937
J. B. March note
75.00
1938
Wetty note
273.31
1938
March note
50.00
1938
March note * 93.28
1938
Lau Motor Company note
125.00
Total
$930.94
* This item questionable. Opinion BLACK, Judge: There are two issues to be decided for the year 1939. The first of these is whether petitioner is taxable on $718.25 rents received in 1939 from the Steel Plate Products Company real estate. Petitioner concedes that in 1939 it collected as rents on the Steel Plate Products real estate the sum of $1,920. Out of this amount it paid taxes, insurance premiums, repairs to the property and interest on its first mortgage, and costs, all aggregating $1,201.75. The balance of $718.25 it held in an account on its ledger to be accounted for in the future in settling with the second mortgage participants for their equity in the property. Of the $1,920 rents which petitioner collected from the property in 1939, it paid itself $808 as interest on its first mortgage and the costs which had been incurred in connection therewith, and it has been stipulated that petitioner included this $808 in its taxable income for 1940. Petitioner did not however, include in its gross income the $718.25 balance left in this account after the deduction of the aforesaid interest paid, taxes and other expenses. Petitioner's reason for not including this $718.25 in its taxable income rests on substantially the following facts: It was trustee under a second mortgage to secure creditors with claims aggregating $9,000, including petitioner's own claim of $2,250 for money loaned the debtor. Petitioner had an oral agreement with these second mortgage holders, accompanied also by some writings, that it would purchase the property under foreclosure of the first mortgage and take title to it; but it also agreed that it would rent the property to Columbia Boiler Company for $160 per month for two years with an option to purchase the property at any time during the term for $15,000. Petitioner agreed that after paying itself interest on the amount loaned the debtor under its first mortgage and the additions thereto which had arisen from other expenses, and also after reimbursing itself for other necessary expenses incurred in the foreclosure, it would add whatever rents remained from the property to the $15,000 which should be received from the sale of the property. From this total would be subtracted all that was due petitioner on its first mortgage indebtedness plus delinquent taxes, and numerous other items which are fully set out injoint Exhibit 9-I. After this was done according to plan and agreement with the second mortgage holders, there remains due to these second mortgage holders, of which petitioner is one, on their claims $2,405.29. Respondent claims that this amount has never been paid over by petitioner to these second mortgage holders and that on this account petitioner should be compelled to account for the $718.25 rent in 1939 and for $1,722.22 profits on sale of the property in 1940. Petitioner replies to this by saying that prior to the complete receipt in 1943 of the sale price of the property from Columbia Boiler Company, it was notified by the Commissioner of Internal Revenue of the deficiencies claimed for the years 1939 and 1940 and on that account only it withheld any distributions to the second mortgage holders. Petitioner avers its readiness and willingness to make distributions to the second mortgage holders of their pro rata part which remains in this ledger account which has been described in our findings of fact just as soon as this tax litigation is concluded and it can be determined definitely how much there is in the fund for distribution to the second mortgage holders. This, we think, is a reasonable attitude on petitioner's part and is entirely consistent with its duties as a fiduciary under the second mortgage indenture which is a part of the record in the instant case. If, after this tax litigation is concluded and it is definitely determined how much petitioner will have for distribution to the second mortgage holders, if it does not fulfill its obligation to them, the Commissioner will then doubtless have ways and means to compel petitioner to account from an income tax standpoint for that which it does not distribute. In the meanwhile, we think there is no reason that we should assume that petitioner will not do its duty as a trustee under the second mortgage. Another argument that respondent has made in his brief as to why we should tax petitioner with the $718.25 rentals in 1939, and the $1,722.22 profits from the sale in 1940, is that the petitioner tried to get the second mortgage holders to put up their share of expenses and costs to protect their junior lien and they failed or refused to do so and petitioner was, therefore, under no further obligation to them and that petitioner would have been fully justified in claiming that it was the sole owner of the property after it purchased it at the foreclosure sale in March 1938. The facts do show that petitioner did make an earnest effort to get the second mortgage debtors to put up their share of costs and expenses in cash which was necessary to protect their equity and they failed to do anything. It is doubtless true that petitioner, on account of this failure of the second mortgage debtors to do their part in protecting their equities, could have refused to recognize any further obligation to them and could have held the property after its purchase at the foreclosure sale as its very own without further obligation to account to anyone. However, it was within petitioner's power to waive the result of the second mortgage debtors' failure to do their part and this it appears clearly to have done. It should not be penalized for this policy of leniency to the junior lien holders. In Mertens Law of Federal Income Taxation, Vol. 2, section 17.08 is discussed "Payments Impressed with a Trust" and among other things the author says: Where the taxpayer receives payment which cannot be legally devoted to his own uses but under the terms of a trust, express or implied, must be devoted to the benefit of some other person or to some particular purpose not relating to the interest of the taxpayer, it is necessarily held that the taxpayer does not receive income of a character which should be taxed to him personally. It is the beneficial owner who is subject to the tax. The restrictions on the use of the receipts, of course, must be proved. For reasons already stated we think that petitioner has satisfactorily proved that it was restricted in the use in 1939 of the $718.25 rentals in question in the manner which has been detailed in the findings of fact. Petitioner is, therefore, not taxable on this amount and as to this issue we sustain petitioner. Bad Debt Recovery Issue The next item for consideration in 1939 is a bad debt recovery of $159.79 which the Commissioner has added to petitioner's income for that year. The applicable statute is printed in the margin. [1] *166 *167 It will be noted that the statute which provides for bad debt recovery exclusions provides that such exclusions shall be determined in accordance with regulations prescribed by the Commissioner with the approval of the Secretary. The provisions of Regulations 111 which seem to be applicable to the statute in question are printed in the margin. [2] We think petitioner has failed to prove that it is entitled to exclude from its income in 1939 the $159.59 in question, under the statute and regulations printed in the margin. Petitioner has proved all right enough that in 1934 it charged off and took as deductions from its income for that year bad debts which aggregated $6,699 and that its income tax return for said year showed a loss of $652.59 after the allowance of the $6,699 as a deduction for bad debts. The evidence also shows that of the bad debts which petitioner charged *168 off its books in 1934, $930.94 was recovered by petitioner in subsequent years prior to 1939. Of this amount $93.28 seems to be in doubt. If we make allowance in petitioner's favor of this $93.28, there still remains as having been collected prior to 1939 the aggregate sum of $837.66 as representing bad debts which were charged off in 1934. This aggregate amount of $837.66 substantially exceeds the loss of petitioner in 1934 which amounted to, as we have said, $652.59. Certainly without more, it would seem clear that prior to 1939 petitioner had fully made up its bad debt loss in 1934 for which no tax benefit was received and that any bad debt recovered in 1939 which had been charged off in 1934 would have to go into petitioner's gross income for that year and could not be claimed as a "Bad Debt Recovery Exclusion" under the applicable statute and regulations. The Commissioner's regulations which we have printed in the margin provide in part: * * * A taxpayer claiming a recovery exclusion shall submit, at the time the exclusion is claimed, the computation of the recovery exclusion claimed for the original year for which the items were deducted or credited, and computations showing *169 the amount recovered in intervening years on account of the section 22(b)(12) items deducted or credite for the original year. The petitioner has complied with these regulations in some respects. It has, as we have already stated, furnished us with information as to the total amount of bad debts which it charged off in 1934 and took as deductions from its gross income in that year; it has furnished us with information as to the amount of its net loss for 1934 after all deductions were allowed; it has also furnished us with a schedule showing bad debt recoveries in subsequent years prior to 1939. As already pointed out, this schedule shows an aggregate of collections in excess of the net loss for 1934. Petitioner claims that it has proved that all but $100.64 of these bad debt recoveries were returned as taxable income in the years when collected. In other words, that only $100.64 was excluded from income prior to the collection of the $159.59 in 1939, which is the amount here in issue. We have carefully examined the evidence which is in the record on this issue and we cannot agree with petitioner that it has satisfactorily met its burden of proof on this issue and has proved that *170 only $100.64 was excluded prior to 1939. The evidence is too vague and indefinite in some important respects to establish petitioner's contention. We must, therefore, sustain the Commissioner on this issue for the want of sufficient evidence to overcome the presumption of correctness which attaches to the Commissioner's determination. Taxable Year 1940 For the taxable year 1940 there is only one issue. As we have already pointed out, petitioner concedes that it is not entitled to the $977.80 loss deduction which it claimed on its 1940 income tax return. But while conceding that it had no loss in the Steel Plate Products Company real estate transaction, it denies that it had a gain of $1,722.22 from the sale of the property in 1940, as the Commissioner has determined. Petitioner alleges that its gain from the sale was $453.82 instead of the $1,722.22 determined by the Commissioner. The following computation has been made in petitioner's brief showing its profit realized in 1940 from his transaction: Proceeds of Sale of Mort-
gaged property paid to
petitioner
$13,581.60
Less Transfer Stamps
15.00
Net Sale or Realization
$13,566.60
Less Cost as shown in
Exhibit 9-I
$13,566.60
Less depreciation de-
ducted in prior year's
tax returns
453.82
Net Remaining Cost
13,112.78
Net Taxable Income in the Taxable
Year of 1940
$ 453.82
*171 We think the evidence sustains the correctness of this computation and we approve it. Respondent's determination can only be sustained upon the theory that petitioner was the entire owner and holder of the property after the date that it purchased it at foreclosure sale in March 1938, and that the second mortgage debtors had no equity of any kind therein which it was bound to respect. We have held against respondent on this issue in deciding Issue I for the year 1939. For the same reasons as there stated, we decide in favor of petitioner as to the amount of taxable gain which it realized from the sale of the property in 1940. Decision will be entered under Rule 50. Footnotes
1. Internal Revenue Code. SEC. 22. GROSSINCOME.
* * * *
(b) Exclusions From Gross Income. - The following items shall not be included in gross income and shall be exempt from taxation under this chapter: * * * * *
(12) Recovery of Bad Debts, Prior Taxes, and Delinquency Amounts. - Income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax, or amount. For the purposes of this paragraph: * * * * *
(D) Definition of Recovery Exclusion. - The term "recovery exclusion", with respect to a bad debt, prior tax, or delinquency amount, means the amount, determined in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, of the deductions or credits allowed, on account of such bad debt, prior tax, or delinquency amount, which did not result in a reduction of the taxpayer's tax under this chapter (not including the tax under section 102) or corresponding provisions of prior revenue laws, reduced by the amount excludible in previous taxable years with respect to such debt, tax or amount under this paragraph.↩
2. REGULATIONS 111. Sec. 29.22(b)(12)-1. Recovery of Bad Debts, Prior Taxes, and Delinquency Amounts. - (a) In General. Section 22(b)(12) provides that income attributable to the recovery during any taxable year of bad debts, prior taxes, and delinquency amounts shall be excluded from gross income to the↩